**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM KENLEY,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  14-1232 (JEB)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Plaintiff William Kenley brings this suit alleging that Metropolitan Police Department officers overstepped their bounds during a June 20, 2013, incident.  He claims that after he began to videotape officers falsely arresting his friend, they turned on him.  One charged at him, knocked his phone from his hands, and shoved him to the ground.  Several officers then conspired to falsely arrest him to cover up their misdeeds and to retaliate against him for recording them.  As part of this plan, they fabricated a claim that he had sicced his dog on one of the officers and had thus committed an assault on a police officer.  He was consequently arrested, detained overnight, and formally charged.  Although the prosecutor eventually dismissed the case, Plaintiff seeks recompense from the District of Columbia and four of the officers under myriad causes of action.

Defendants previously moved to dismiss many of the claims in Plaintiff's Complaint, and in a lengthy Opinion, the Court granted these motions in part and denied them in part.  See Kenley v. District of Columbia (Kenley I), No. 14-1232, 2015 WL 1138274, at *1-2 (D.D.C. Mar. 13, 2015).  It also reserved judgment on a handful of issues, noting the cursory manner in

which the parties had addressed them.  Kenley thereafter filed an Amended Complaint in

accordance with the Court's Order, and several Defendants have taken the opportunity to bring a

second, consolidated Motion to Dismiss, advancing their absolute-immunity defense once more

and raising new arguments regarding the negligent-training-and-supervision claim against the

District.  Because the Court concludes that immunity does not lie for the officers, but agrees that

the training-and-supervision cause of action should be dismissed, it will again grant the Motion

in part and deny it in part.

## I.      Background

The Court has previously recounted Kenley's allegations in considerable detail, see

Kenley I, 2015 WL 1138274, at *1-2, so it only briefly summarizes them here.  On June 20,

2013, Kenley observed Metropolitan Police Department officers assaulting and falsely arresting

his friend, so he began to record the incident on his cellphone.  See Am. Compl., ECF No. 41, ¶¶

8-11.  As Officer Adam Shaatal placed the friend in handcuffs, he looked at Kenley and told

Officer Brandon Baldwin to "get him back."  Id.  Baldwin subsequently "charged" at Plaintiff,

"intentionally knocking his cellphone . . . out of his hands," and "pushed him violently to the

ground."  Id., ¶ 12.  Around the same time, Kenley's dog came running out of his house.  See id.,

¶ 13.  The officers drew their guns and pointed them at both him and his dog.  See id.  "[I]n an

effort to defuse the situation," Plaintiff took the dog back inside.  See id.

Officers Shaatal, Baldwin, and Michael Littlejohn then met with other officers on the

scene and "agreed to falsely charge . . . Kenley with assaulting a police officer" and to "institute

criminal proceedings" against him in order to intimidate him and "cover up their wrongful

conduct."  Id., ¶¶ 16-18.  In furtherance of the plan, Shaatal claimed that Kenley had assaulted

him by goading his dog to attack.  See id., ¶ 20.  Plaintiff was then arrested, and Baldwin, who

2

"knew or should have known" that Shaatal's claim was false, wrote up an arrest report based on his accusation. See id., ¶ 20.

Afterwards, Sergeant Jonathan Dorrough secured the area and canvassed it for witnesses. See id., ¶ 21. At least one gave a statement on a PD Form 119 (for witness statements) that when the dog ran outside, Kenley did not encourage it to attack, but instead said, "Mom, put her back in the house." Id. (internal quotation marks omitted). That evening or the next morning, Dorrough told Baldwin about the exculpatory statement. See id., ¶ 24. Although Baldwin, the "papering officer," and Dorrough, the supervising officer, were allegedly required to turn over all witness statements to the U.S. Attorney's Office during the "papering" process – i.e., the prosecution's initial screening of the case for formal charging – they did not disclose this statement. See id., ¶¶ 22-23. Baldwin and Littlejohn also failed to inform the prosecutor that they had been present when the dog ran out, yet had never heard Kenley say, "[G]et him, sic him" – which is the entire apparent basis for the assault charge. See id., ¶ 19.

As a result of the officers' conduct, Kenley was detained overnight, presented in court, and charged with felony assault on an officer. See id., ¶ 20. Sometime after the arrest, an unknown officer also informed Kenley's employer of the charges, and he was suspended from work without pay while the case was pending. See id., ¶ 15. Over a month after the incident, the witness statement was finally turned over to the prosecution. See id., ¶¶ 25-26. After receiving this information and conducting an investigation, the prosecutor moved to dismiss the charges. See id., ¶ 26.

Plaintiff claims to have suffered a number of injuries as a result of this incident, including "lost wages, medical expenses[,] . . . emotional distress, and . . . damage to his professional reputation." Id., ¶ 40. He thus filed this suit against Shaatal, Littlejohn, Baldwin, Dorrough, and

the District of Columbia, alleging a multitude of claims under 42 U.S.C. § 1983, the U.S.

Constitution, and state law.  After the case was removed to this court, each of the Defendants

moved to dismiss certain of the claims against them, and Plaintiff moved to amend his

Complaint.  The Court granted these motions in part and denied them in part, allowing Kenley to

proceed with the following claims:

> (1) Violations of the First Amendment against Baldwin, Dorrough,
>     Littlejohn, and Shaatal (Count I);
> (2) Violations of the Fourth Amendment against Baldwin,
>     Dorrough, Littlejohn, and Shaatal (Count II);
> (3) False arrest against Baldwin, Dorrough, Littlejohn, Shaatal,
>     and the District (Count III);
> (4) Assault and battery against Baldwin and the District (Count
>     IV); and
> (5) Negligence against Dorrough, Littlejohn, and the District
>     (Count V).

Now that Plaintiff has filed an Amended Complaint limited to these counts, Defendants

Dorrough, Littlejohn, and the District have submitted a renewed Motion to Dismiss that pertains

solely to Count V.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a claim for relief

when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

motion to dismiss, the Court must "treat the complaint's factual allegations as true and must

grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow

v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation

marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as

true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported

by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation

omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and

unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232,

236 (1974)).

## III.    Analysis

Count V, as amended, advances a negligence cause of action against Littlejohn,

Dorrough, and the District. Plaintiff's claim against the two officers is based on "their failure to

exercise reasonable care as police officers in . . . [the] gathering of all witness statements,

including those with exculpatory evidence in their possession[,] and disclosing [them] to the

prosecutor at papering." Am. Compl., ¶ 61. His claim against the District relies on its failure to

properly train and supervise its officers in several specific areas. See id., ¶¶ 59-60. In moving to

dismiss this count, Dorrough and Littlejohn contend that they are absolutely immune from suit

for their decisions about when to disclose witness statements to the prosecution. See Mot. at 4-8.

The District, for its part, argues that Kenley did not offer "sufficient factual enhancement" to

state a negligent-training-and-supervision claim against it. See id. at 8-11. The Court will

address these issues in turn.

### A.   Dorrough and Littlejohn

Dorrough and Littlejohn previously argued that the negligence claims against them

should be dismissed because they are entitled to absolute immunity for their actions in

conducting criminal investigations. See Dorrough Opp. to Pl.'s Mot. to Am., ECF No. 32, at 11-

5

12; Littlejohn Opp. to Pl.'s Mot. to Am., ECF No. 31, at 10.  Although the Court expressed

doubts "that decisions about whether to share exculpatory evidence with the prosecution are the

sort of discretionary activities to which absolute immunity should attach," it declined to

definitively rule on the issue because the parties had addressed the complex matter in extremely

cursory fashion.  See Kenley, 2015 WL 1138274, at *15.  Having augmented their submissions,

Defendants now ask the Court to reconsider the issue.  Because the conduct complained of

differs for Dorrough and Littlejohn, the Court will analyze their immunity defenses separately.

> 1.  *Dorrough*

As noted above, Plaintiff alleges that Dorrough canvassed the scene for witnesses to the

purported assault on Shaatal and obtained at least one statement on a PD Form 119 that cast

substantial doubt on Shaatal's version of events.  See Am. Compl., ¶ 21.  He also alleges that

Dorrough, as the supervising officer, was required to provide this statement to the prosecution

during the "papering" process, but that he failed to turn it over for more than a month.  See id.,

¶¶ 22-23, 25.  Because the statement ultimately was provided to the prosecution, Dorrough

argues that the immunity question should center not on his decision about whether to turn over

exculpatory evidence, but rather on his decision about when to turn it over.  Yet, even framed in

this manner, he is out of luck.

"The law recognizes the doctrine of absolute immunity in order to serve the public

interest in effective government."  District of Columbia v. Jones, 919 A.2d 604, 607 (D.C. 2007).

Under District of Columbia law, an official may have absolute immunity from suit where "(1)

the official acted within the outer perimeter of his official duties, and (2) the particular

government function at issue was discretionary as opposed to ministerial."  Minch v. District of

Columbia, 952 A.2d 929, 939 (D.C. 2008) (quoting Moss v. Stockard, 580 A.2d 1011, 1020

(D.C. 1990)) (internal quotation marks and alterations omitted).  The Court previously concluded that conveying evidence to a prosecutor easily falls within an officer's core duties.  See Kenley, 2015 WL 1138274, at *14.  The more difficult question is whether decisions about the timing of doing so are discretionary or ministerial in nature.

The inquiry into discretionary versus ministerial functions "seeks to ascertain whether the governmental action at issue allows significant enough application of choice to justify official immunity, in order to assure fearless, vigorous, and effective decisionmaking." Moss, 580 A.2d at 1020 (quoting District of Columbia v. Thompson, 570 A.2d 277, 297 (D.C. 1990)) (internal quotation marks omitted).  In essence, courts are required to decide "whether society's concern to shield the particular government function at issue from the disruptive effects of civil litigation requires subordinating the vindication of private injuries otherwise compensable at law." Id. at 1021.  The D.C. Court of Appeals has articulated four policy factors to aid courts in balancing these competing interests, including: "(1) the nature of the injury, (2) the availability of alternative remedies, (3) the ability of the courts to judge fault without unduly invading the executive's function, and (4) the importance of protecting particular kinds of acts." Id. (citing Thompson, 570 A.2d at 297).  "This list," however, "is not exclusive," and "a court may use other factors it deems relevant." Jones, 919 A.2d at 609 (citations omitted).  In the end, "the scope of immunity should be no broader than necessary to ensure effective governance." Id. (quoting Moss, 580 A.2d at 1021) (internal quotations marks and citation omitted).

After further consideration, the Court believes that Dorrough is not entitled to absolute immunity for his alleged actions here.  Putting the four factors to the side for a moment, it seems clear that decisions about whether and when to turn over witness statements on PD Forms 119 do not require significant discretion.  MPD General Order 701.03, which governs the procedures for

7

responding to incidents involving assaults on police officers, states that certain officers "shall be present during the papering process" and that they "shall" present all PD Forms 119 at that time. See Reply, Exh. 1 (MPD General Order 701.03(V)(E)).  The order also states that the official authorizing the charge – which appears to be Dorrough in this case – "shall[] [e]nsure compliance with the provisions of this order."  MPD General Order 701.03(V)(F)(1).  This regulation leaves little room for choice.  Officers who obtain such statements and those who supervise them are not directed to weigh competing policy factors to arrive at a decision; they are, instead, told rather precisely what to do.  See Nealon v. District of Columbia, 669 A.2d 685, 690 (D.C. 1995) ("Generally, discretionary acts involve the formulation of policy, while ministerial acts involve the execution of policy.").  And although Defendants suggest in their Reply that Dorrough "turned the administrative investigation over to Officer Shaatal's supervisor" and thus had no responsibilities related to the papering of this case, Reply at 3, the Court is confined to rely at this time on the allegations in the Amended Complaint.

In their Reply, Defendants stress that this MPD general order is not a "regulation" and that compliance with such orders is not mandatory; instead, they only "provide officials with guidance on how they should perform those duties which are mandated by statute or regulation." Reply at 2 (internal quotation marks and citation omitted).  They also argue that "Plaintiff points to no statutes or regulations that mandate how criminal investigations should be conducted," and that this "points to the conclusion that the conduct of criminal investigations is left to the discretion of the police."  Mot. at 5.  Defendants offer no supporting authority, however, for the proposition that whether an act is ministerial or discretionary begins and ends with whether there is a statute or regulation on point.  In fact, it seems clear from prior cases addressing such questions that the existence of a regulation or statute is not the key inquiry.  The pertinent

question is, instead, whether the function requires significant application of choice, thus

necessitating absolute protection from suit to ensure its fearless discharge.  The general order

demonstrates that, even if not an absolute rule, MPD has provided clear guidance to officers

handling PD Forms 119, and such guidance does not require officers to weigh various competing

interests.  See Cooke-Seals v. District of Columbia, 973 F. Supp. 184, 189 (D.D.C. 1997)

("Activity that is constrained by regulations or clearly established policy or standards is

ministerial in nature. . . . If, as plaintiff alleges, MPD had established policies prohibiting the

disclosure of confidential information, or had, in fact, directed plaintiff's supervisors not to

disclose such information, then plaintiff's supervisors were 'required only to perform the

ministerial function of carrying out that decision.'") (citing Briscoe v. Arlington Co., 738 F.2d

1352, 1363 (D.C. Cir. 1984), and quoting Durso v. Taylor, 624 A.2d 449, 459 (D.C. 1993)).

    Balancing the factors laid out in Thompson further suggests that Dorrough's handling of

the PD Form 119 should not be absolutely protected.  The first and second – the nature of the

injury and the availability of alternative remedies – admittedly weigh in favor of immunity.  The

injuries attributable to Dorrough's conduct – i.e., damage to Kenley's professional reputation,

loss of income, and emotional distress – are principally economic injuries.  See District of

Columbia v. Simpkins, 720 A.2d 894, 898 (D.C. 1998) (stating that to extent alleged injuries are

economic, rather than physical, first factor arguably cuts in favor of immunity); Jones, 919 A.2d

at 609 (same).  He may also be able to recover for these injuries through his other tort claims.

Factors three and four, however, counsel strongly against conferring absolute immunity here.

    With regard to the third – the ability of courts to judge fault without unduly disrupting the

executive's function – the Court believes that inquiring into the propriety of Dorrough's conduct

would not be particularly intrusive.  Determining facts such as whether there was a witness

statement on a PD Form 119 and when and under what circumstances that statement was turned

over to the U.S. Attorney's Office hardly calls for extensive inquiry.  And while the D.C. Court

of Appeals has made clear that absolute immunity is not limited to high-ranking officials, see

Moss, 580 A.2d at 1020, Dorrough stands in a markedly different position from, say, the Mayor

or Chief of Police when it comes to the potential to disrupt executive functions.  See, e.g., Jones,

919 A.2d at 610 (holding mayor absolutely immune from suit regarding statements made to press

about discharge of employee).  Dorrough thus fails to persuade the Court that allowing this claim

to move forward will result in undue interference.

Turning to the fourth factor – the importance of protecting particular kinds of acts – the

Court believes that decisions about when to disclose PD Forms 119 in assault-on-police cases do

not merit absolute protection.  This is particularly so where the witness statements, as here,

contain clearly exculpatory information.  For one thing, declining to provide full immunity will

not deter conduct that society has a strong interest in protecting; if anything, the reverse is true –

police officers should be encouraged to turn over exculpatory material as soon as possible.  Such

conduct also appears markedly different from the type that has been given absolute immunity,

such as making statements to the public about ongoing police investigations.  See, e.g., Liser v.

Smith, 254 F. Supp. 2d 89, 101 (D.D.C. 2003).  In those cases, courts have recognized that

although such statements can defame individuals, there is a strong interest in enabling the police

to keep the public informed about the status of their investigations and to seek the public's help

in apprehending suspects without fear of liability.  See, e.g., id.; Kendrick v. Fox Television, 659

A.2d 814, 820 (D.C. 1995) see also Jones, 919 A.2d at 610 (granting mayor absolute immunity

in defamation suit for public statements about former employee, in part, because "society has a

strong interest in protecting the ability and willingness of officials to keep the public informed

10

about their own conduct and the conduct of persons under their supervision"). In contrast, there is no clear interest in keeping prosecutors in the dark as they decide whether to bring charges. Inquiring into such conduct, furthermore, does not threaten to encroach upon executive policy decisions. This factor, then, also tips against providing absolute protection.

In their Motion, Defendants cite to two D.C. Circuit decisions in support of Dorrough's claim to immunity, albeit with little explanation and to little avail. In <u>Gray v. Bell</u>, 712 F.2d 490 (D.C. Cir. 1983), the court addressed the scope of the discretionary-function exception under the Federal Tort Claims Act. It ultimately ruled that where <u>prosecutors</u>' investigative activities cannot be disassociated from the clearly discretionary decision to prosecute, such activities fall within the exception. <u>See</u> <u>id.</u> at 515-16. It also concluded, in language antithetical to Dorrough's position, that in cases where prosecutors' investigatory actions <u>are</u> "removed sufficiently from the decision to prosecute[,] . . . the discretionary function clause would <u>not</u> provide any protection." <u>Id.</u> at 515 (emphasis added). Here, Dorrough plainly had a duty to ensure the disclosure of PD Forms 119, irrespective of discretionary decisions regarding, *e.g.*, whether to initiate a criminal investigation or prosecution.

The other case, <u>Murphy v. United States</u>, 64 F. App'x 250 (D.C. Cir. 2003), is similarly unhelpful to his cause. There, in an unpublished decision, the panel affirmed the lower court's ruling that "the decision . . . to open a special investigation" – which "'involves elements of judgment and choice'" – "falls within the discretionary function exception" to the FTCA. <u>Id.</u> at 250. Here, by contrast, Dorrough's decision on when to turn over the statement had nothing to do with the initiation of an investigation.

In the end, "[t]he provision of immunity rests on the view that the threat of liability will make . . . officials unduly timid in carrying out their official duties . . . ." <u>Jones</u>, 919 A.2d at 607

(quoting <u>Westfall v. Erwin</u>, 484 U.S. 292, 295 (1988)).  The Court does not believe that

providing absolute immunity for the dilatory turning over of exculpatory PD Forms 119 in

assault-on-police cases is necessary to assure "fearless, vigorous, and effective decisionmaking."

<u>Moss</u>, 580 A.2d at 1020 (quoting <u>Thompson</u>, 570 A.2d at 297).  It will, accordingly, allow

Kenley to proceed with his negligence claim against Dorrough.

> 2.  *Littlejohn*

Littlejohn's alleged negligence is somewhat different.  Kenley does not claim that he

possessed or even had knowledge of the exculpatory witness statement on PD Form 119.  Rather,

Plaintiff complains that Littlejohn "did not hear him say to the dog 'get him, sic him,'" and that

he failed to promptly disclose this fact to the prosecution.  <u>See</u> Am. Compl., ¶ 19.  Although this

accusation may be susceptible to differing interpretations, the Court must construe it in the light

most favorable to Plaintiff at this stage of the litigation.  In doing so, it views Kenley's claim as

broader than simply alleging that Littlejohn failed to vet his colleagues' paperwork to ensure that

he fully agreed with their recounting of the events that had transpired.  It construes it, instead, as

alleging that Littlejohn <u>knew</u> Kenley had been falsely arrested and that he did not promptly

disclose this fact.  <u>See</u> Opp. at 3 ("Defendant Littlejohn was in a position to know of the false

police report and false arrest and had a duty to disclose this information to the prosecutor . . . .").

Viewing the allegation in this more expansive way, Littlejohn is not entitled to absolute

immunity.  Although Plaintiff has not directed the Court to any statute, regulation, or other

policy governing the disclosure of such information, one could hardly argue that decisions about

whether to disclose a plainly false arrest to the prosecution require significant application of

discretion.  The <u>Thompson</u> factors, moreover, again weigh against immunity.  Although the first

and second still tip in Defendant's favor, the third and fourth again do not.  Determining whether

Littlejohn was aware of the false arrest and whether he disclosed this to the U.S. Attorney's Office would not cause significant disruption to executive functions.  Plaintiff, after all, has also alleged that he was part of a conspiracy to falsely arrest Kenley, and the discovery related to that claim will be nearly co-extensive with the discovery required for this cause of action.  The Court, furthermore, cannot discern any societal interest in protecting decisions to withhold such information.  In fact, quite the opposite: police officers should be encouraged to promptly relay information about false arrests to prosecuting officials.  Such decisions, furthermore, simply do not require difficult trade-offs, and inquiring into this area would not risk usurping the executive's discretion.  The negligence claim against Littlejohn will thus be permitted to go forward.

   B.  <u>The District</u>

   Count V of the Amended Complaint also asserts that <u>the District</u> was negligent because it failed to adequately train and supervise its officers in two ways.  The City previously moved to dismiss this claim on the grounds that it would be prejudicial and was unnecessary given that it had conceded its potential negligence liability under the doctrine of *respondeat superior*.  The Court rejected the argument, ruling that Plaintiff should be allowed to proceed with both theories for the time being.  <u>See</u> <u>Kenley I</u>, 2015 WL 1138274, at *17-18.  Now that Kenley has filed an Amended Complaint, the District raises a new basis for dismissing the claim – *viz.*, that Kenley has not sufficiently pled it.  On this point, the City finds greater success.

   To show that an employer was negligent in its training and supervision, "a plaintiff must show: that the employer 'knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'"  <u>Phelan v. City of Mount Rainier</u>, 805

A.2d 930, 937-38 (D.C. 2002) (quoting <u>Giles v. Shell Oil Corp.</u>, 487 A.2d 610, 613 (D.C. 1985)); <u>see also, e.g.</u>, <u>Rawlings v. District of Columbia</u>, 820 F. Supp. 2d 92, 114-16 (D.D.C. 2011).  Despite Plaintiff's attempt to broaden the bases for this cause of action in his Opposition, <u>see</u> Opp. at 12, the Court limits its analysis to the allegations in his Amended Complaint.  There, Plaintiff asserts that there are two areas in which the District's training and supervision was lacking: 1) it failed to train and supervise all of its officers regarding the rights of citizens to record the police, and 2) it failed generally to train and supervise Shaatal, despite his history of misconduct.  The Court examines these in turn.

As to the first, Kenley asserts, "[o]n information and belief," that "prior to July 2012[,] the District of Columbia had a policy and practice of police officers seizing cameras from citizens video taping police arrests in public places and threatening or arresting citizens who failed to stop recording and move away or be arrested."  Am. Compl., ¶ 30.  Yet he also asserts that the District changed this policy almost a year before the incident involved in this suit. Specifically, he has alleged that "[o]n July 19, 2012[,] MPD General Order 304-19 titled 'Video Recording, Photographing, and Audio Recording of Metropolitan Police Department Members by the Public' was issued following [the] settlement of a lawsuit alleging . . . MPD [p]ractices violated the First Amendment and Fourth Amendment rights of citizen's [*sic*] and bystanders," <u>id.</u>, ¶ 31, and that this order prohibited the sort of conduct alleged here.  <u>See id.</u>, ¶¶ 32-33.  He does not assert that this order was somehow unclear or inadequate.  Nor does he allege that, after the issuance of this policy, there were incidents that would have put the District on actual or constructive notice that its training and supervision in this area was lacking.  In the absence of such allegations, the Court cannot conclude that Kenley has stated a plausible claim to relief.

As to the second basis for the claim, Kenley's allegations pertaining to Shaatal's history of "misconduct" are not enough for the claim to pass muster.  The Amended Complaint states only very generally that, "[o]n information and belief, Officer Shaatal had a prior history of police misconduct," Am. Compl., ¶ 27, and that there were "prior complaints" against him.  Id., ¶ 60.  He does not allege that the misconduct or complaints related in any way to the behavior challenged here.  The District's actual or constructive knowledge of unrelated wrongdoing – such as tardiness or being disrespectful – could not put it on notice that its training and supervision was deficient with regard to, *e.g.*, fabricating crimes and falsely arresting people.  Its failure to provide additional training or supervision for unrelated conduct also could not have proximately caused Plaintiff's alleged injuries.  The Court thus believes that, absent any allegation that Shaatal's past behavior should have put the District on notice of the type of improper conduct here, Kenley's Amended Complaint is insufficient.

The Court will, consequently, dismiss the negligent-training-and-supervision claim against the District.  See, e.g., Brown v. Sessoms, 774 F.3d 1016, 1025 (D.C. Cir. 2014) (dismissing negligent-supervision claim because, even assuming the employees violated protocol, the "complaint contain[ed] no facts from which it [could] be inferred that the Board 'knew or should have known' that [the employees] would not follow protocol"); Harvey v. Kasco, No. 14-1571, 2015 WL 3777362, at *4 (D.D.C. June 17, 2015) (dismissing negligent-training-and-supervision claim because plaintiff "ha[d] not pled any facts regarding the District of Columbia's knowledge that one of its officers would allegedly use excessive force in effectuating an unjustified arrest in a single incident, or that other officers would fail to intercede"); Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 127-28 (D.D.C. 2012).

Of course, that does not mean that the District is completely off the hook with regard to negligence liability.  As discussed above, Plaintiff can proceed with his negligence claim against Dorrough and Littlejohn, and he has alleged that the District is vicariously liable under the doctrine of *respondeat superior*.  If he prevails against the officers, the District could still be held responsible for negligence.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss in part and deny it in part.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  July 13, 2015